## EARNEST SMITH V. THE STATE.

### No. 7183. Decided February 28, 1923.

**1.—Selling Intoxicating Liquors—Accomplice—Want of Corroboration.**

Where upon trial of selling intoxicating liquor, said sale having taken place before the amendment of the Dean law, exempting purchasers in crimes of this sort from being accomplices, and the trial court did not instruct the jury that the main State's witness, who was a purchaser was an accomplice, the same was reversible error. Following Plachy v. State, 91 Texas Crim. Rep., 405.

**2.—Same—Insufficiency of the Evidence—Want of Corroboration—Declaration of Third Party.**

Where upon trial of selling intoxicating liquor, the accomplice testimony was not sufficiently corroborated, and it did not appear that the statements of a certain third party by which the accused was sought to be bound was made in the presence and hearing of the accused, and under circumstances reasonably calling for a denial, or indicating his dissent, the conviction cannot be sustained.

Appeal from the District Court of Ellis. Tried below before the Honorable W. L. Harding.

Appeal from a conviction of selling intoxicating liquor; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Ellis County of the offense of selling intoxicating liquor, and his punishment fixed at two years in the penitentiary.

On the night of October 13, 1921, Bryan Forbes, the son of the Ellis County sheriff, accompanied by one Hickman, went to the home of Tom Smith, a brother of appellant, about 11 o'clock at night and there bought from some one a quantity of liquor for which $2.50 was paid. Both Forbes and Hickman testified as witnesses for the State, and were the only witnesses who testified to the sale of the liquor. Bryan Forbes was unquestionably an accomplice to the offense charged against appellant, said sale having taken place before the amendment to the Dean Law, exempting purchasers in crimes of this sort from being accomplices, became effective on November 15, 1921. The trial court did not instruct the jury that Forbes was an accomplice. That this was error is manifest. Plachy v. State, 91 Texas Crim. Rep., 405, 239 S. W., 979.

In the testimony of young Forbes we find the following, referring to the occasion of himself, young Hickman and Henry Quaite going

93 T. C.—34

down to the home of Tom Smith to purchase the liquor in question: "When we called for Earnest to come out I don't know whether I or some of the other boys told him what we wanted. Henry Quaite was kind of spokesman for the bunch; but one of us three told Earnest what we wanted—that we wanted some whisky and he said all right. We wanted a pint and he just pulled it out of his pocket right then, and insisted on us taking a quart. We were standing right there near the house." Adverting to the testimony of young Hickman, the only other eye-witness to the transaction, we observe that he states that he went with Bryan Forbes to Tom Smith's on the night in question. We quote from his testimony: "Earnest Smith came out to the car where we were and the transaction took place right there at the car. Forbes and I finally got out of the car; we were talking about wanting to get some whisky. The party had the whisky in his pocket. We told him we wanted to buy some whisky—whoever did the talking told him that. I forget whether we stated how much we wanted. I do not believe he told us how much he had." It is true that elsewhere in his testimony this witness referred to the fact that Forbes received the whisky and paid the money to the defendant. We are not at all sure that this witness Hickman is not also an accomplice in law. If in fact he and Forbes were contributing to the purchase, or if they were acting together in the purchase of the liquor in question, the transaction having taken place before November 15, 1921, Hickman might also be deemed an accomplice. We are of opinion at least that the question is left in much doubt in our minds, and inasmuch as the State relies almost alone upon the testimony of said two witnesses, and in view of certain other proceedings had upon this trial, we find ourselves unwilling to assent to the soundness of this judgment.

The young men visited the home of Tom Smith and purchased the liquor in question about 11 o'clcok at night. The defense of Earnest Smith was that of alibi, and he put on a number of witnesses who testified that he was at his home some two miles distant from the home of Tom Smith, on the night in question. It further appears from the testimony that after the three young men went back to Waxahachie they gave information to the sheriff of the success of their effort to buy whisky, and that official accompanied by three deputies went to the home of Tom Smith about four o'clock A. M. on that same night. They called for Tom and when he came out into the yard they arrested him. He was a witness on behalf of appellant in this case. While on the stand he was asked with reference to a statement made by him when he was in process of arrest by the officers on that night. The State sought to show that Tom called out, "Earnest, Earnest, shoot, shoot, shoot," and also that he further said, "Earnest, don't shoot. they are holding me between you and them." This testimony was objected to as being out of the presence and hearing of appellant, and a diligent search of the record fails to disclose anything in the testimony tending

to show the presence of appellant at said house at four o'clock in the morning, save the statements just referred to. The trial court in his charge to the jury instructed them that they could not consider these statements for any purpose except as affecting the credibility of Tom Smith as a witness. It is a well settled rule that a witness can not be impeached by proof of contradiction upon an immaterial matter. If appellant was in the house of his brother and heard the latter make the statements above referred to, it would be extremely doubtful whether such statements could be held admissible upon any possible rule. That the statements were prejudicial seems beyond question. Tom Smith was struggling with the officers and resisting arrest and calling to his brother, if the testimony of the witnesses be correct, to · shoot, shoot, shoot. The other construction was that he was telling his brother not to shoot as the officers were holding him between the brother and the officers. Just how appellant could be bound by these statements made by Tom Smith, even if he was in the house at the time they were made, is not clear. The entire lack of any testimony for the State showing appellant's presence in Tom Smith's house at the time of said arrest and statements, seems to indicate that the statements could not be introduced upon any theory as having been made in the presence and hearing of the appellant and by which he was bound. The rule in any case is that it must be made to appear reasonably certain that the statement of a third party by which the accused is sought to be bound, was made in the presence and hearing of the accused and under circumstances reasonably calling for a denial or indicating his assent.

Our view of the inadmisibility of this testimony when taken together with the serious doubt arising from the testimony of young Hickman as to whether he is or is not an accomplice, seems to us to fully justify the reversal of this judgment, and it is so ordered.

*Reversed and remanded.*